IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:14-CV-209-FL

| | |
|---|---|
| JENNIFER C. STRINGFIELD, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-18, DE-20] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Jennifer C. Stringfield ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The pending motions are now ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the matter be remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on March 25, 2010, alleging disability beginning January 26, 2010. (R. 48, 207-10). The claim was denied initially and upon reconsideration. (R. 85-109). A hearing before the Administrative Law Judge ("ALJ") was held on July 19, 2012, at which Claimant, who was represented by counsel, appeared

and testified. (R. 62-84). On September 24, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 45-61). Claimant requested review of the ALJ's decision, and the Appeals Council denied Claimant's request on September 10, 2014. (R. 1-7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges that the ALJ erred in (1) determining Claimant had the residual functional capacity ("RFC") to perform a limited range of light work; (2) giving little weight to the opinion of Claimant's treating orthopedic surgeon; and (3) evaluating Claimant's credibility. Pl.'s Mem. [DE-19] at 10-21. Claimant asks the court to order payment of benefits rather than remanding

3

the matter for further proceedings. *Id.* at 22.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found that Claimant had not engaged in substantial gainful employment since her alleged onset date of January 26, 2010. (R. 50). Next, the ALJ determined that Claimant had the severe impairments of degenerative disc disease status post-lumbar fusion and hardware removal. *Id.* Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction of her activities of daily living, social functioning, and maintaining concentration, persistence and pace, with no episodes of decompensation of an extended duration. (R. 51). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 52).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the limitations of "occasional stooping" and "understanding, remembering, and carrying out simple instructions due to pain." (R. 52-56). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 54-

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

56). At step four, the ALJ concluded that Claimant was unable to perform any past relevant work. (R. 56). However, at step five, the ALJ concluded there were jobs that existed in significant numbers in the national economy that Claimant could perform. (R. 56-57).

## B.     Claimant's Testimony at the Administrative Hearing

At the time of the administrative hearing, Claimant was 38 years old and living with her fiance, her three children (ages 19, 17, and 14), and her daughter's boyfriend. (R. 65-66, 77). She completed the tenth grade, taking regular classes, and had not obtained a GED. (R. 66). Claimant stopped working after her first back surgery, a spinal decompression and fusion, on January 26, 2010. (R. 66). She subsequently had a second surgery to remove hardware placed during the first surgery and feels her pain and mobility have only gotten worse. (R. 67). Claimant does not know how she will feel from one hour to the next, and she has an even number of good days and bad days. *Id.* She experiences intense throbbing and stabbing pain from the middle of her back down her right hip and into her right leg, and she has constant tingling and numbness in her right leg, causing her to fall sometimes. (R. 67-68). Claimant rated her back pain as a constant six or seven out of ten on a normal day and a nine or ten on a bad day. (R. 68). She can stand comfortably for five to ten minutes at a time, cannot sit straight up for very long, and normally leans to one side or the other. (R. 68-69). Claimant is most comfortable positioned on her side on a pillow, which takes the pressure off her lower spine. (R. 69). She can lift no more than a five-pound bag of sugar without straining her back and pinching her sciatic nerve, resulting in shooting pain up and down her back. (R. 71).

Claimant uses a TENS unit three times a day, every day, and takes Oxycodone, Cymbalta, and a muscle relaxer for pain and depression. (R. 67, 69). She was referred to physical therapy and

5

went twice, but discontinued the sessions due to increased pain and lack of transportation. (R. 79-80). As a result of Claimant's pain, her memory is horrible, she cannot concentrate, has difficulty sleeping, is tired and naps for at least an hour every afternoon, and cannot participate in household activities. (R. 69-70, 74). On a bad day, Claimant does not get out of bed. (R. 74-75, 77). Claimant gave up her driver's license due to the side effects of her pain medication and the numbness she experiences in her right leg. (R. 71). She does about five percent of the household chores and can dust, keep the table clean, and let the dogs outside, any of which takes no more than five minutes. (R. 70-71).

Claimant also experiences anxiety attacks several times a week, and it feels like she is having a heart attack. (R. 72). The anxiety attacks are brought on by her back pain and her leg going numb, and she avoids social situations but attends church once a month. (R. 72, 80). Claimant had gained 70 pounds (she was 5'8" tall and weighed 236 pounds), which does not help her anxiety or depression and makes her very tense around others. (R. 72-73). She goes grocery shopping at Walmart once a month with her fiance, but has to rest intermittently as she shops and waits in the car while he checks out because she cannot stand in the line. (R. 73-74, 82). Claimant estimated that if she worked 20 days a month, she would miss 10 to 12 days. (R. 75). Her treating orthopedist has not recommended further surgery, believes her condition is permanent, and is just trying to keep her comfortable with medication. (R. 77, 81).

## V. DISCUSSION

### A.   The ALJ's RFC Determination

Claimant contends the ALJ's determination that Claimant is capable of light work is not supported by substantial evidence, Pl.'s Mem. [DE-19] at 10-16, specifically taking issue with the

ALJ's consideration of (1) Claimant's credibility, *id.* at 17-21, and (2) the opinion of Claimant's treating orthopedist, *id.* at 13-15. Defendant responds that the ALJ applied the correct legal standards in determining Claimant's RFC and his findings are supported by substantial evidence. Def.'s Mem. [DE-21] at 4-7, 9-10.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). Furthermore, in assessing functional limitations, the ALJ must consider "all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. § 404.1520a(c)(1). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment

7

"must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

### 1.     The ALJ's Consideration of Claimant's Hearing Testimony

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not

Case 7:14-cv-00209-FL   Document 23   Filed 02/19/16   Page 8 of 18

supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Claimant asserts the ALJ committed several errors in assessing her credibility, namely failing to analyze her hearing testimony, using improper boilerplate language, and requiring Claimant to provide objective evidence of the severity of her pain. Pl.'s Mem. [DE-19] at 17-21. Claimant also argues that the ALJ improperly failed to incorporate into the RFC nonexertional limitations related to her anxiety, about which she testified at the administrative hearing, and that such limitations would have precluded the ALJ's use of the Grids. *Id.* at 15. Defendant responds that the ALJ properly analyzed Plaintiff's subjective complaints because they were inconsistent with the medical evidence of record. Def.'s Mem. [DE-21] at 9-10. The undersigned agrees with Claimant that the ALJ erred in failing to sufficiently explain his consideration of her hearing testimony.

The ALJ, after summarizing Claimant's treatment records, found that Claimant's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the statements by the claimant concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 54). The Fourth Circuit in *Mascio v. Colvin* criticized the use of this boilerplate language in assessing a claimant's credibility. 780 F.3d at 639. The Fourth

Circuit explained that the boilerplate language "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" *Id.* (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)). However, the Fourth Circuit recognized that "[t]he ALJ's error would be harmless if he properly analyzed credibility elsewhere." *Id.*

Here, in addition to the boilerplate statement, the ALJ provides some discussion in support of the credibility determination, consisting chiefly of findings in the medical records indicating Claimant's surgical procedures were successful and her pain was controlled by medication. (R. 55). The ALJ also cites a consultative examiner's opinion finding that Claimant's memory was intact, as well as Claimant's ability to prepare simple meals, watch television, read, and play board games. *Id.* The ALJ concludes that "the testimony of the claimant is not fully credible concerning the severity of her symptoms and the extent of her limitations." *Id.* The problem with the ALJ's analysis is that he fails to discuss any of Claimant's hearing testimony and, as was the case in *Mascio*, fails to make clear "how he decided which of [claimant's] statements to believe and which to discredit." *Mascio*, 780 F.3d at 640; *see Perez v. Colvin*, No. 1:13-CV-324, 2015 WL 7302257, at *4-6 (M.D.N.C. Nov. 18, 2015) (unpublished) (finding the "ALJ's recitation of the objective medical evidence did not constitute a sufficient credibility analysis under *Mascio*" because the court is "left to speculate as to why the ALJ credited some portions of Plaintiff's testimony, while discrediting other portions.").

For example, Claimant testified she experiences anxiety attacks several times a week brought on by her back pain and her leg going numb, and resultantly avoids social situations. (R. 72, 80).

10

Claimant testified she had gained 70 pounds (she was 5'8" tall and weighed 236 pounds),[2] which has not helped her anxiety or depression and makes her very tense around others. (R. 72-73). There are several treatment notes in the record documenting Claimant's complaints of anxiety or depression. *See, e.g.*, (R. 335, 364, 380, 414). Claimant also testified that she can stand comfortably for only five to ten minutes at a time, cannot sit straight up for very long (R. 68-69), can lift no more than a five-pound bag of sugar without straining her back and pinching her sciatic nerve, resulting in shooting pain up and down her back (R. 71), and as a result of pain, her memory is horrible, she cannot concentrate, has difficulty sleeping, is tired and naps for at least an hour every afternoon, and cannot participate in household activities (R. 69-70, 74). The ALJ failed to evaluate any of this testimony and, consequently, it is unclear what portions he found to be credible or not credible and, importantly, whether he appropriately considered the limiting effects of Claimant's anxiety and pain on her ability to work, including whether additional nonexertional limitations were appropriate. *See* 20 C.F.R. 404.1545(a)(3) (in determining a claimant's RFC "[w]e will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you . . . .").

The ALJ's generic statement that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted . . ." (R. 53) is insufficient in that it does not allow for substantial evidence review. *See Fox v. Colvin*, No. 14-2237, 2015 WL 9204287, at *3 (4th Cir. Dec. 17, 2015) (unpublished) (per curiam) ("The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal

---

[2] The undersigned also notes that despite Claimant's testimony at the hearing (R. 73) and treatment notes (R. 418-20) indicating she was obese and receiving treatment for her obesity, the ALJ failed to consider the impact of Claimant's obesity in accordance with S.S.R. 02-1p, and should do so on remand.

11

requirements to the record evidence.") (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citations omitted) & citing *Arnold v. Sec'y of Health, Ed. & Welfare*, 567 F.2d 258, 260 (4th Cir. 1977) (the ALJ failed to include an adequate discussion "in what amount[ed] to no more than a bare recital that [the ALJ] considered the evidence.")). Additionally, in this case, the ALJ's step-two discussion is no substitute for the missing analysis. The ALJ acknowledged at step two that Claimant had been prescribed medications for depression and anxiety, but found her mental impairments to be non-severe. (R. 51). The ALJ relied, in part, on a consultative psychological examination from July 2010 (R. 51, 315-18), two years prior to the administrative hearing, but Claimant's hearing testimony from July 2012 (R. 72, 80), corroborated by treatment notes from January and April of 2012 (R. 380, 414), indicates she was experiencing more frequent anxiety attacks and that her anxiety had worsened over time. Moreover, all impairments, including those that are non-severe, must be considered in the RFC assessment, and the mental RFC assessment used at steps four and five "requires a more detailed assessment," as the ALJ noted (R. 52). 20 C.F.R. § 404.1545(a)(2); S.S.R. 96-8p, 1996 WL 374184, at *5 ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.").

The ALJ's use of the problematic boilerplate language coupled with the failure to discuss Claimant's hearing testimony requires remand. *See Perez*, 2015 WL 7302257, at *4-6 (remanding case where given the use of the "objectionable boilerplate" identified in *Mascio*, the "selective recitation of Plaintiff's testimony," and the "tacit adoption of some (but not all) of that testimony," the court could not adequately review the ALJ's credibility analysis) (citing *Radford*, 734 F.3d at 295

12

("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling."); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (concluding that an ALJ is required to build an "accurate and logical bridge" between the evidence and his conclusions) (citation omitted)). Although Claimant requests the court reverse the Commissioner's decision and award benefits, the Fourth Circuit has instructed that remand for further proceedings is the appropriate remedy in cases such as this where "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Radford*, 734 F.3d at 295. The Fourth Circuit has made clear that it is not the role of the court to remedy such failures by engaging in the required analysis in the first instance. *See Fox*, 2015 WL 9204287, at *5 ("Our circuit precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."); *Radford*, 734 F.3d at 296 (citing *Hancock v. Astrue*, 667 F.3d 472 (4th Cir. 2012)). Accordingly, it is recommended that the case be remanded for the ALJ to properly consider Claimant's testimony at the administrative hearing and to explain "how he decided which of [claimant's] statements to believe and which to discredit" as required by *Mascio*, 780 F.3d at 640.

### 2. The ALJ's Consideration of the Medical Opinion Evidence

The regulations require the ALJ to consider all evidence in the record when making a disability determination. 20 C.F.R. § 404.1520(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). More weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than

13

non-treating sources, such as consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), he must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8.

Claimant contends the ALJ improperly weighed the opinion of her treating orthopedic surgeon, Dr. Miller. Pl.'s Mem. [DE-19] at 13-14. In response, Defendant contends the evidence

14

considered by the ALJ demonstrates Dr. Miller's opinion was "unduly restrictive in light of subsequent improvement in Plaintiff's condition." Def.'s Mem. [DE-21] at 6-7.

Dr. Miller performed Claimant's spinal decompression and fusion surgery on January 26, 2010. (R. 291-94). Claimant was seen in follow-up at Dr. Miller's practice several times thereafter: in February, she was reportedly doing "quite well" with a little bit of pain . . . ." (R. 330); in March, she reported being okay during the day, but unable to sleep due to pain at night because she could not lie comfortably in any position and was treated with steroid, pain, and sleep medications (R. 331); in April, she received an epidural steroid injection for back and intermittent leg pain (R. 332-33) and was re-checked by Dr. Miller, who noted some right leg pain, good positioning of her hardware, and ordered a CT scan (R. 334); and in May, she was noted as having a "poor response" to the steroid injection and increased pain with poor function (R. 335-36), a CT scan showed "delayed union at the level of her fusion," and Dr. Miller recommended a bone growth simulator (R. 314, 337). On May 28, 2010, Dr. Miller indicated Claimant could return to work with the restrictions of no bending, no prolonged standing, and no lifting greater than ten pounds. (R. 339).

Claimant continued to be seen in follow-up at Dr. Miller's practice: in June, Claimant was seen at the practice's pain clinic and it was noted that Percocet gave her "excellent pain relief" but that she was still being woken by pain and had some nausea (R. 341); in August, she was re-checked by Dr. Miller who noted she reported still having significant back pain, that she had tenderness to palpation over her hardware, which could be contributing to her pain, and that she might at some point need to consider hardware removal (R. 342); in September, a CT scan showed she was developing a solid fusion, Dr. Miller discussed further treatment options, including hardware removal, and she was scheduled for a follow-up in December (R. 343, 345), and a pain clinic note

15

indicated she was experiencing lower back pain and a burning sensation (R. 344); in December, she was seen at the pain clinic for continued pain and reported falling two times (R. 347), and she was re-checked by Dr. Miller, who noted she was developing a solid fusion but still had palpable tenderness over her hardware posteriorly, and that she would go ahead with hardware removal (R. 348); on January 6, 2011, Dr. Miller removed Claimant's "[p]ainful retained hardware" without complication (R. 352), and on January 19, she reported not feeling different and was advised she should be feeling better in a couple of weeks (R. 353); in February, she reported continued pain and that the hardware removal had not made much difference, and she was referred to physical therapy and for a trial of electrical stimulation (R. 354); in March, she again visited the pain clinic reporting increased pain (R. 355); in April, she reported still being in pain to Dr. Miller's physician's assistant and an MRI was ordered (R. 356); in May, she follow-up again with Dr. Miller's physician's assistant, the MRI revealed a very small central disc extrusion at L5-S1 without nerve root impingement or spinal stenosis, but no significant abnormalities, and physical therapy was again recommended (R. 358-59); in June, August, and November 2011 and February 2012, she returned to the pain clinic with continued pain (R. 360-61, 378, 412).

The ALJ evaluated Dr. Miller's opinion as follows:

> The assessment of the claimant's treating physician, Dr. Miller, that the claimant could return to work albeit with restrictions of no bending, prolonged standing, or lifting greater than 10 pounds, (Exhibit 5F) is given little weight as it is not consistent with the objective evidence of record and the residual functional capacity described above.

(R. 55). The Fourth Circuit has recently found that a similar "cursory and conclusory analysis" was insufficient to allow for meaningful review and required remand. *See Fox*, 2015 WL 9204287, at *6 (discounting treating source's opinion because it was "not well[-]supported by the medical

16

record" and "does not provide any reason, let alone a 'good reason[ ],' why the ALJ concluded that [the treating source's] opinion was inconsistent with other medical findings.") (citing 20 C.F.R. § 404.1527(c)(2); S.S.R. 96-2p, 1996 WL 374188 (July 2, 1996)). There is evidence in the treatment notes of Dr. Miller and his associates outlined above that would tend to support Dr. Miller's opinion. Therefore, it was incumbent upon the ALJ to explain his decision to discount Dr. Miller's opinion, rather than leaving the court to speculate as to what evidence the ALJ believed to be inconsistent and why. *Id.* at *5 ("Inconsistent evidence abounds, and yet the ALJ 'leaves us to wonder' in such a way that we cannot conduct 'meaningful review.'") (quoting *Mascio*, 780 F.3d at 638 & citing *Radford*, 734 F.3d at 296). Furthermore, the language used by the ALJ appears to again "get[] things backwards" where it implies that Dr. Miller's opinion was compared to the RFC, rather than considering Dr. Miller's opinion as part of the RFC analysis. *Mascio*, 780 F.3d at 639. Just as a claimant's pain and RFC "are not separate assessments to be compared with each other," *id.*, neither should the ALJ weigh medical opinions based on their consistency with an already-determined RFC, where the regulations require consideration of statements by medical sources when assessing a claimant's RFC. 20 C.F.R. § 404.1545(a)(3). Because the court must not "engage[] in an analysis that the ALJ should have done in the first instance," *Fox*, 2015 WL 9204287, at *4, the case should be remanded to allow the ALJ to properly evaluate, in conformity with the regulations and S.S.R. 96-2p, Dr. Miller's opinion.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-18] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-20] be DENIED, and the final decision of the Commissioner be upheld.

17

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 4, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **10 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the 19th day of February 2016.

Robert B. Jones, Jr.
United States Magistrate Judge

18